UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTHEW J. FECTEAU,

*Plaintiff,*

v.

CITY OF MOUNT VERNON, et al.,

*Defendants.*

Case No. 23-CV-9173 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

Plaintiff Matthew J. Fecteau ("Plaintiff") brought this Action pursuant to 42 U.S.C. § 1983 against the City of Mount Vernon (the "City"), Sergeant Mario Stewart, Detective Montika Jones, Dawnette McClaren-Nelson, Commissioner David Gibson, Commissioner Patrick Holder, (together with the City, the "City Defendants"), and Charlene Humphreys, (collectively, "Defendants"), alleging multiple constitutional violations. (*See generally* Second Am. Compl. (Dkt. No. 364).) Before the Court are the Parties' positions as to proposed redactions to certain portions of the Court's March 25, 2026 Opinion in this Action, which was initially filed under seal, (*see* Op. (Dkt. No. 362)), as well as Plaintiff's pre-motion letter seeking this Court's recusal and certain related disclosures, (Letter from Matthew J. Fecteau to Court (May 24, 2026) (Dkt. No. 374).) For the reasons set forth below, the Court determines that the March 25, 2026 Opinion should be unsealed in its entirety. The Court further denies Plaintiff's requests to file a motion seeking this Court's recusal and related disclosures as to this Court and Judge McCarthy; Plaintiff simply has not demonstrated—or even clearly identified—any basis upon which this Court's recusal would be proper or upon which he would be entitled to the requested disclosures.

I.      Sealing of the Court's Opinion

On March 25, 2026, the Court issued an Order and Opinion dealing with multiple pending motions in this Action.  (*See* Op.)  Around the same time, the Court also issued an opinion in a related case against insurer Safety National, referred to herein as the "Related Action."  *See Fecteau v. Safety Nat'l Cas. Corp.*, No. 25-CV-3821, 2026 WL 821567, at *25 (S.D.N.Y. Mar. 25, 2026).  As the Opinion in this Action quoted directly from sealed filings, the Court directed the Parties to indicate their views as to what portions of the Opinion, if any, should remain under seal.  (*See* Op. at 82.)  Some of the quoted-from materials were filed under seal at the request of non-party Safety National on the basis that "potentially incendiary statements" contained therein presented safety concerns for the non-party.  (Mem. Endorsement (Dec. 17, 2024) 3 (Dkt. No. 106).)  Others were filed under seal "to protect the identity of certain City of Mount Vernon staff members who," counsel contended, were "subject to improper attention and harassment by . . . [P]laintiff."  (*See* Letter from Lalit K. Loomba, Esq. to Court (Mar. 17, 2025) 3 (Dkt. No. 168); Order dated Mar. 17, 2026 (Dkt. No. 170) (granting request).)  At the time of the sealed materials being filed, Plaintiff opposed the sealing of some of the documents, contending that there was no legitimate basis for their being sealed.  (*See* Pl.'s Opp'n to Safety National's Mot. to Seal 2–3 (Dkt. No. 103).)

On April 10, 2026, via email, Plaintiff sent to the Court proposed redactions, which he represented had also been sent to opposing counsel.  On April 29, 2026, counsel for the City Defendants wrote to the Court and took the position "that the Opinion should be unsealed on the Court's docket in its present form."  (Letter from Lalit K. Loomba, Esq. to Court (Apr. 29, 2026) (Dkt. No. 368).)  Counsel appeared unaware that Plaintiff had proposed redactions.  (*See id.* (justifying position on the basis that "none of the [P]arties ha[s] filed with the Court proposed

redactions").) Accordingly, the Court "directed" Plaintiff "to send a copy of his proposed redactions to opposing counsel." (Mem. Endorsement (Apr. 29, 2026) (Dkt. No. 369).)

On April 30, 2026, counsel for the City Defendants informed the Court via a letter that it was their position that the Opinion did not "disclose personal identifying information or other private information," and so the City Defendants continued to believe that the Opinion should be unsealed. (Letter from Lalit K. Loomba, Esq,. to Court (Apr. 30, 2026) (Dkt. No. 370).) The Court directed Plaintiff to respond to this letter. (Mem. Endorsement (Apr. 30, 2026) (Dkt. No. 371).) In a letter dated April 30, 2026, and docketed on May 4, 2026, Plaintiff responded to the effect that Defendants were being disingenuous. (Letter from Matthew J. Fecteau to Court (May 4, 2026) 1 (Dkt. No. 372).)[1] Plaintiff also used the letter to retread certain arguments addressed in the Court's March 30 Opinion—namely, his claims that Defendants "falsified" "records and violations," "destroyed, altered, withheld, [and/]or [failed to] preserv[e]" certain "evidence" relevant to his claims—to contend that certain witnesses "committed perjury," and to argue that certain evidence is relevant to Monell liability. (*Id.* at 1–2 & n.3.) None of these arguments, even those sounding in transparency, is relevant to the legal question whether these records should remain sealed, and so the Court will not address them further at this juncture.

Next, Plaintiff contended that he was "concern[ed] that collateral and inflammatory material [wa]s being used to distract from the merits" of his claims. (*Id.* at 2.) The Court agrees with Plaintiff that this case "is not about whether [Plaintiff] used forceful language" in his communications with other Parties or their counsel. (*Id.*) However, the Court again reminds

---

[1] On May 4, 2026, a second, substantively identical letter, also dated April 30, 2026, was docketed in this Action. (*See* Letter from Matthew J. Fecteau to Court (May 4, 2026) (Dkt. No. 373).) As this letter advances no independent argument, the Court does not address it separately.

Plaintiff that the use of forceful language—even constitutionally protected language, as Plaintiff urges his speech was—may be sanctionable in a court of law where it amounts to threats, harassment, and abuse of the judicial process. *See James v. Kuhnle*, No. 19-CV-1175, 2022 WL 2046679, at *3 (E.D.N.Y. June 7, 2022) ("Courts have not hesitated to dismiss a *pro se* Plaintiff's claims with prejudice based on . . . serious threats, which have no place in a civilized society, to say nothing of a federal court."). Further, many threats and instances of harassment do not constitute First Amendment-protected speech at all. *See, e.g.*, *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 33 (2d Cir. 2018) (explaining that certain categories of speech, such as language "that constitutes a 'true threat' of violence, 'harassment,' or 'fighting words,'" are categorically "unprotected" by the Constitution's free speech guarantee (citations omitted)). And regardless of whether attention to Plaintiff's "forceful" language may distract from the merits of his claims, this point, too, is irrelevant to the propriety of sealing.

Finally, Plaintiff closed his letter with a request that the Court "either adopt [his] proposed redactions or make clear that any discussion of [his] communications is not being used as a substitute for adjudicating the merits of [his] constitutional claims." (Letter from Matthew J. Fecteau to Court (Apr. 30, 2026) 2.) He further requested "that the Court not permit the City Defendants to weaponize selective docket disclosure for reputational harm while resisting transparency" on the previously described unrelated issues. (*Id.*) In other words, Plaintiff has identified no basis for continued sealing—except, perhaps, unspecified "reputational harm"—nor has he explained how his proposed redactions advance interests that outweigh the common law or constitutional rights of access, or how they are appropriately narrowly tailored. Nevertheless,

in recognition of Plaintiff's pro se status, the Court has considered whether there exist any compelling arguments in favor of maintaining the relevant portions of the Opinion under seal.[2]

Determining whether the public has a right of access to documents in a case, or whether those documents may instead remain under seal, is a multi-step process governed by constitutional as well as common law.  The public has a strong presumptive right of access to certain judicial documents, established by the First Amendment, as well as a weaker presumptive right to all judicial documents, established at common law.  *See Newsday LLC v. County of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013) ("Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law."); *United States v. Amodeo*, 71 F.3d 1044, 1047–49 (2d Cir. 1995) ("*Amodeo II*") (discussing and analyzing the presumption of access under common law).

The common law right of public access to judicial documents is one "firmly rooted in our nation's history," that provides "a measure of accountability" for federal courts and protects the public's "confidence in the administration of justice."  *Lugosch v. Pyramid Co. of Onondaga*,

---

[2] The Court notes that counsel for multiple of the Defendants and counsel for a non-Party in this Action have submitted letters stating that they had not engaged in any ex parte communications with the Court and explaining that counsel had no relationship with the Court that could warrant recusal.  (*See* Letter from Michael S. Komar, Esq. to Court (June 1, 2026) 2 (Dkt. No. 375) ("[T]o avoid any doubt and so the record is clear, neither I nor anyone from my law firm have engaged in any ex parte or off-the-record communications with the Court in connection with this action, Plaintiff's insurance action, or any other matter.  Nor do I or my co-counsel . . . have any personal, social, professional, or financial relationship with Your Honor, whom we have never even met or spoken to previously." (emphasis omitted)); Letter from Lalit K. Loomba, Esq. to Court (June 1, 2026) 1 (Dkt. No. 376) ("[A]lthough Plaintiff has not claimed, or even suggested, that [t]his office has had ex parte communications with the Court, we feel it prudent to state, up front, that none of the attorneys or staff at The Quinn Law Firm has had any ex parte conversations with the Court regarding Safety National, Sedgwick, Michael Komar, or indeed regarding any subject." (emphases omitted)).)

435 F.3d 110, 119 (2d Cir. 2006) (citations omitted).  In deciding whether the common law right

applies, the Court evaluates whether the document is a "judicial document," that is, "a filed item

that is relevant to the performance of the judicial function and useful in the judicial process."

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016)

(quotation marks and citation omitted); *see also United States v. Greenwood*, 145 F.4th 248, 254

(2d Cir. 2025) ("The common law right of public access turns on whether the document at issue

is a judicial document, to which the common law presumption applies." (quotation marks and

citation omitted)).  If so, the Court determines the weight of the presumption.  *See Bernstein*, 814

F.3d at 142–43 ("Once the court has determined that the documents are judicial documents . . . it

must determine the weight of that presumption.  The weight . . . is a function of (1) the role of

the material . . . in the exercise of Article III judicial power and (2) the resultant value of such

information to those monitoring the federal courts[.]" (quotation marks and citation omitted));

*Amodeo II*, 71 F.3d at 1049 ("As one moves along the continuum [determined by the role of the

material in the exercise of Article III power and the value of such information to those

monitoring the courts], the weight of the presumption declines.").  The Court then balances

competing considerations—for instance, the "danger of impairing law enforcement or judicial

efficiency" or "the privacy interests of those resisting disclosure"—against the presumption.

*Amodeo II*, 71 F.3d at 1050.[3]

---

[3] The Court does not separately consider the First Amendment right of access, as the materials are subject to disclosure under the weaker presumption of public access afforded by the common law.  *See United States v. Tartaglione*, No. 16-CR-832, 2026 WL 1243942, at *6 (S.D.N.Y. May 6, 2026) (explaining where the asserted interests are "insufficient to overcome even a modest common law presumption of access," those interests are unlikely to "overcome the stronger First Amendment presumption," and so it is not necessary to conduct separately the First Amendment analysis (quotation marks and citation omitted)); *Koonce v. Sazerac Co.*, No. 23-CV-4323, 2026 WL 296591, at *4 (S.D.N.Y. Feb. 4, 2026) (explaining that where the

At the first step, "it is axiomatic that a court's orders and written opinions are 'judicial documents' to which the presumption of access applies." *Moroughan v. Cnty. of Suffolk*, No. 12-CV-512, 2021 WL 280053, at *2 (E.D.N.Y. Jan. 24, 2021); *see also Hardy v. Equitable Life Assurance Soc'y of U.S.*, 697 F. App'x 723, 725 (2d Cir. 2017) (summary order) (noting a "long tradition of public access to court orders"); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) ("[I]t should go without saying that the judge's opinions and orders belong in the public domain."); *Huawei Techs. Co. v. PanOptis Pat. Mgmt., LLC*, No. 24-CV-4708, 2026 WL 370287, at *1 (S.D.N.Y. Feb. 10, 2026) (noting right of access "clear[ly]" applies to orders and written opinions). Accordingly, the public right of access attaches to the Opinion.

The weight of the presumption applied to judicial opinions is extremely strong. *Huawei Techs. Co.*, 2026 WL 370287, at *1 (describing the weight as "extremely strong"); *Moroughan*, 2021 WL 280053, at *2 (same); *Adler v. Ingle*, No. 20-CV-48, 2020 WL 7682392, at *1 (D.D.C. Oct 29, 2020) (noting a "presumption of full disclosure" that is "especially strong" as applied to orders and opinions (quotation marks omitted)). Indeed, the presumption of public access is "at its zenith for the Court's reasoning and all that is considered (and relied upon) by the Court in reaching its decision on the litigants' substantive legal rights." *Huawei Techs. Co.*, 2026 WL 370287, at *1 (quotation marks omitted). Accordingly, the weight of the presumption of public access is very great, perhaps at its apex.

The Court can discern two countervailing interests that might weigh in favor of sealing the materials identified by Plaintiff. First, the Court identifies an interest in protecting the privacy of individuals mentioned in the Opinion—an interest encompassing the "reputation

---

common law framework disposes of a motion to seal, there is no need to undertake the First Amendment analysis).

harm" gestured at by Plaintiff.  *See D.J.C.V. v. United States*, No. 20-CV-5747, 2023 WL 3775283, at *2 (S.D.N.Y. June 2, 2023) (explaining interest in "safeguard[ing]" the "privacy, safety, and security" of individuals whose identities were not relevant to any issue before the court based on "intense public scrutiny" and "acts of violence" against government employees working on relevant issues).  However, these interests are substantially undercut and "substantially diminished" where the information at issue has already "entered the public domain."  *Am. Fed'n of Gov't Emps. v. U.S. Off. of Pers. Mgmt.*, No. 25-CV-1237, 2026 WL 891221, at *5 (S.D.N.Y. Apr. 1, 2026), *reconsideration denied*, No. 25-CV-1237, 2026 WL 1162382 (S.D.N.Y. Apr. 29, 2026).  There is, at least arguably, a second and related interest in preventing the dissemination of inflammatory threats, *i.e.* a safety interest.  *See id.* (considering "safety" of individuals implicated in materials sought to be sealed); *United States v. Graham*, No. 17-CR-663, 2026 WL 42384, at *2 (S.D.N.Y. Jan. 7, 2026) ("[T]he . . . [e]mails used threatening and inappropriate language toward the [c]ourt and [counsel], but did not respond to the substance of the [motion].  Due to their inflammatory nature, the [c]ourt placed the . . . [e]mails under seal.").  However, that interest, too, is undercut where there is no evidence that the disclosure "would likely lead to increased threats or harassment."  *Am. Fed'n of Gov't Emps.*, 2026 WL 891221, at *5; *see also Ello v. Singh*, 531 F. Supp. 2d 552, 585 (S.D.N.Y. 2007) (rejecting request to seal "mudslinging" comments on basis that marginal privacy harm did not outweigh public right to access court filings), *as amended* (Nov. 13, 2007); *cf. United States v. Doe*, No. 19-MC-27, 2019 WL 1081675, at *8 (D. Conn. Mar. 6, 2019) (maintaining under seal information relating to cooperator in criminal prosecution based on risk of harm of violence to that individual while in custody).

Most of the materials that Plaintiff seeks to maintain under seal are based on materials that are already publicly available, either because they were part of filings made on the public docket (rather than under seal), or because they were statements from this Court and the Magistrate Judge assigned to Plaintiff's actions.  Accordingly, the above-identified interests would not be meaningfully advanced by their remaining under seal.  *Locus Techs. v. Honeywell Int'l Inc.*, No. 19-CV-11532, 2024 WL 5103334, at *3 (S.D.N.Y. Dec. 13, 2024) (rejecting motion to seal materials that had already been filed as exhibits on the public docket); *N. Am. Soccer League LLC v. U.S. Soccer Fed'n, Inc.*, No. 17-CV-5495, 2024 WL 2959967, at *30 (E.D.N.Y. June 12, 2024) ("[I]t is improper to seal information that is already public."), *order corrected on reconsideration*, No. 17-CV-5495, 2024 WL 7020163 (E.D.N.Y. July 18, 2024), and *aff'd*, No. 25-1225-CV, 2026 WL 1397077 (2d Cir. May 19, 2026)[4]

The Court also notes that many of the materials Plaintiff requested to seal involve the Court's or Judge McCarthy's characterization of his litigation conduct.  Plaintiff is advised that

---

[4] To be specific, there is no reason to seal the following portions of the Opinion (identified by page numbers in the PDF version of the Court's Opinion), all of which quote directly from or characterize publicly-filed materials: the bottom of the final complete paragraph on page 4 (characterizing filings); the bottom of page 14 (characterizing one of the Court's orders); a portion of footnote 9 on page 14 (quoting directly from the Court's earlier, published opinion); a direct quote from Plaintiff's publicly-filed memorandum of law spanning the bottom of page 18 to the top of page 19; a parenthetical on page 19 characterizing and quoting directly from Plaintiff's publicly-filed declaration; the Court's description of Judge McCarthy's handling of a conference with Plaintiff, which quotes extensively from the publicly-available transcript of that conference and characterizes its contents, and which spans almost the entirety of page 20, much of page 21, including footnote 11, and much of page 22; the citations to docket numbers 150 and 152 in the footnote on page 23; the top of page 26 which characterizes and quotes materials publicly filed by Plaintiff; the first paragraph of footnote 15, which spans the bottom of pages 30 and 31, and which simply characterizes proceedings in this Action and includes citation to another case; a quotation from Plaintiff's public filing near the bottom of page 32 and a reference to the same near the top of page 35 (and to the extent that these materials would implicate Defendant McLaren-Nelson's privacy interests, the Court notes that her counsel has indicated that there is no opposition to unsealing); and the Court's legal conclusions, a warning that certain conduct may run afoul of Rule 11, and analysis in footnote 17 on page 36.

sealing offers a shield to protect important interests, not a sword to be wielded by litigants—whether those litigants are pro se plaintiffs or government defendants—who would have their conduct escape public scrutiny.  Court materials are presumptively open for a reason: "'Without publicity, all other checks are insufficient: in comparison of publicity, all other checks are of small account.'"  *In re Oliver*, 333 U.S. 257, 271 (1948) (quoting 1 Jeremy Bentham, Rationale of Judicial Evidence 524 (1827)); *accord New York C.L. Union v. New York City Transit Auth.*, 684 F.3d 286, 296 (2d Cir. 2012) ("*NYCLU*").  Public access to court proceedings operates as "a guarantor of fairness, accuracy, and correct procedure—as much because these further democratic values and help adjudicators reach correct results as because they protect" the parties to civil and criminal trials.  *NYCLU*, 684 F.3d at 296, 298.  While the right of access "is not absolute," that right is "offend[ed]" by "the attempt to" restrict access "without sufficient justification."  *Id.* at 296.  And the shielding of behavior that the Court (as well as Judge McCarthy) has repeatedly described as "harassing," or the shielding of the Court's repeated admonitions to Plaintiff that certain behavior could be sanctionable, is both unjustified and, frankly, pernicious.

The balance of interests is at least somewhat different as to the Court's use of direct quotes from sealed materials filed by Defendants, quotations which appear entirely in footnotes 12 and 13 of the Court's Opinion, and a characterization of which appears in the final paragraph of footnote 15.  (*See* Op. at 23 n.12, 23 n.13, & 30 n.15.)  These materials have not yet been referenced in unsealed court filings in *this* Action.  They involve communications between Plaintiff and various individuals, primarily members of the Mount Vernon Corporation Counsel's office, but also communications with a third-party company insurer.  Two of the cited documents were publicly filed in the Related Action, and so have already been made generally

available.  (*Compare* Dkt. No. 97-1 at 2 *with* Dkt. No. 90-3 at 2 (25-CV-3821 Dkt.) *and* Dkt. No.

134-2 at 2–3 *with* Dkt. No. 95-3 at 3–4 (25-CV-3821 Dkt.).)  Accordingly, the privacy and/or

security interest in those materials is no longer compelling or sufficient to outweigh the right of

access.  *Cf. Compass, Inc. v. Zillow, Inc.*, No. 25-CV-05201, 2025 WL 3112993, at *1 (S.D.N.Y.

Nov. 6, 2025) ("The information sought to be redacted appears to be confidential . . . due to [the

p]laintiff's interest in keeping that information private until [the p]laintiff's . . . [e]arnings

[r]eport is public.  Since [the p]laintiff published its . . . [e]arnings [r]eport yesterday . . . [the

p]laintiff no longer appears to have a compelling reason to keep that information sealed.

Accordingly, the First Amendment presumption of access outweighs [the p]laintiff's privacy

interests here."); *New York Times Co. v. U.S. Def. Counterintelligence & Sec. Agency*, 806 F.

Supp. 3d 444, 451 (S.D.N.Y. 2025) (explaining in the analogous context of the FOIA that public

discussion of a fact waives privacy interest in that fact), *on reconsideration in part*, No. 25-CV-

2333, 2026 WL 575357 (S.D.N.Y. Mar. 2, 2026).  As mentioned above, the citations to docket

number 150 and 152 in footnote 12 should not be sealed because those filings were not made

under seal.  (*See* Op. at 23 n.12.)  This leaves only the Court's citations to docket number 134-4,

(*id.*); those citations do not reference the inflammatory threats that led the Court to permit filing

under seal in the first instance, nor do they reference any third party's information or other

sensitive details.  The citations in footnote 13 are references to materials filed under seal by the

City Defendants.  (*See id.* at 23–24 n.13.)  The only substantial privacy and safety interests

implicated by the unsealing of these materials are those of the City Defendants and their

counsel—who have already represented that they support unsealing.  (*See* Letter from Lalit K.

Loomba, Esq. to Court (Apr. 30, 2026).)  Further, the citations do not contain the type of

sensitive personal information or inflammatory threats that could lead to harm to any of the

individuals referenced therein or would justify sealing. *See White v. Cnty. of Suffolk*, No. 20-CV-1501, 2024 WL 3986643, at *3 (E.D.N.Y. Aug. 29, 2024) (explaining the court would not permit sealing where the referenced materials did not contain any sensitive, personally identifying information). Plaintiff's reference to generalized "reputational harm" resulting from the disclosure of these materials does not change the calculus: this interest would be strongly outweighed by the public's right to access court opinions and is insufficient to justify sealing. *See, e.g.*, *In re Demetriades*, 58 F.4th 37, 46 (2d Cir. 2023) ("Here, the only 'interest' in sealing that [the movant] puts forth is her personal interest in avoiding the 'reputational harm' that she might suffer if the public were made aware of the 'very serious allegations here.' That interest, however, cannot meet the 'weighty' standard for overriding the presumptions of open records and public access." (citation omitted)). Accordingly, the Court determines that the entire Opinion is subject to the common law right of access and should be unsealed.

One final note in response to Plaintiff's request to seal: As should be obvious from the substance of the now-unsealed Opinion, the Court continues to consider dispassionately "the merits of [Plaintiff's] constitutional claims." (Letter from Matthew J. Fecteau to Court (Apr. 30, 2026) 2.) However, *if* Plaintiff engages in sanctionable behavior, that behavior may affect the adjudication of his claims because, in such an instance, the Court can and may sanction Plaintiff. As Plaintiff should be well aware, sanctions can be as severe as the dismissal of his claims and an award of attorney's fees against him. *See, e.g.*, *Fecteau*, 2026 WL 821567, at *25 (collecting earlier warnings, including direction that Plaintiff "stop his intimidating, harassing, and threatening behavior, or he may face sanctions, including dismissal of his case"). The imposition of harsh sanctions would be an unfortunate outcome. But Plaintiff is the master of his own fate in this litigation, at least as pertains to the propriety of his conduct. To the extent that he would

like the matter to be resolved expeditiously and with the gravity that constitutional claims merit, he is encouraged to engage with opposing counsel and the litigation process respectfully, regardless of whether Plaintiff feels that Defendants and their counsel have not extended this same courtesy to him.

## II.      Motion to Recuse & Discovery

Plaintiff filed a pre-motion letter requesting a conference or leave to move for "limited disclosure and recusal consideration under 28 U.S.C. § 455." (Letter from Matthew J. Fecteau to Court (May 25, 2026) 1 (Dkt. No. 374).) Plaintiff requests "limited disclosure of any relationship, communication, or circumstance involving the Court, chambers, Safety National Casualty Corporation, Sedgwick Claims Management Services," counsel for Safety National in this and the Related Action, "or any counsel connected to those entities that could reasonably bear on the Court's continued participation in this [A]ction," as well as "any ex parte, informal, or non-record communication concerning Plaintiff, this . . . [A]ction, the related . . . action, sanctions, filing restrictions, or any anticipated state court filing." (*Id.*) Plaintiff assures the Court that he "is not asserting that any improper communication occurred or that any undisclosed relationship exists," but instead wants "disclosure to permit the [P]arties . . . to address whether any circumstance exists that could reasonably create an appearance of partiality." (*Id.*) Plaintiff further requests that, if no improper relationship exists, "the Court state that [fact] on the record." (*Id.*) Finally, in the event that the Court's "impartiality might reasonably be questioned," Plaintiff requests recusal. (*Id.* at 2.) In recognition of Plaintiff's pro se status, the Court construes the request as one made pursuant to 28 U.S.C. § 144 as well as 28 U.S.C. § 455. *United States v. Herbert*, No. 22-CR-141, 2024 WL 2972043, at *1 (W.D.N.Y. June 13, 2024) ("[The d]efendant . . . seeks this [c]ourt's recusal or disqualification under 28 U.S.C. § 455.

Given her pro se status, this [c]ourt also considers the motion under 28 U.S.C. § 144." (footnote omitted)).

Under 28 U.S.C. § 144, a judge should recuse him or herself when a party has filed a "timely and sufficient affidavit" showing that the judge has "a personal bias or prejudice" against the party or in favor of an adverse party.  The statute requires that another district court judge be assigned to hear the matter if the movant establishes both that the disqualification motion is timely and the party's affidavit is legally sufficient.  *Id.*  The standard for an affidavit's legal sufficiency under § 144 in the Second Circuit is that the affidavit must "show the objectionable inclination or disposition of the judge; it must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment."  *Keesh v. Quick*, No. 19-CV-8942, 2022 WL 2160127, at *9 (S.D.N.Y. June 15, 2022) (quoting *Williams v. N.Y.C. Hous. Auth.*, 287 F. Supp. 2d 247, 249 (S.D.N.Y. 2003)). Section 455(b)(l), like § 144, prescribes recusal where a judge has "a personal bias or prejudice" concerning a party. 28 U.S.C. §§ 144, 455(b)(l).  The analysis under the two provisions is the "same."  *Alexander v. Priv. Protective Servs., Inc.*, No. 19-CV-10004, 2023 WL 8174221, at *6 (S.D.N.Y. Nov. 2, 2023) (explaining § 455(a) addresses the "appearance of impropriety"), *report and recommendation adopted*, 2024 WL 911945 (S.D.N.Y. Mar. 4, 2024), *aff'd in relevant part*, No. 24-853, 2025 WL 3083903 (2d Cir. Nov. 4, 2025) (summary order).

Somewhat distinctly, 28 U.S.C. § 455(a) provides that a judge shall disqualify him or herself in any proceeding in which his impartiality might reasonably be questioned, even if no actual bias exists.  *See also Alexander v. Priv. Protective Servs., Inc.*, No. 19-CV-10004, 2023 WL 8174221, at *6 (S.D.N.Y. Nov. 2, 2023) (explaining § 455(a) addresses the "appearance of impropriety"), *report and recommendation adopted*, 2024 WL 911945 (S.D.N.Y. Mar. 4, 2024),

*aff'd in relevant part*, No. 24-853, 2025 WL 3083903 (2d Cir. Nov. 4, 2025) (summary order). "When a judge's impartiality is questioned on bias or prejudice grounds, 'what matters is not the reality of bias or prejudice but its appearance.'" *Burke v. West 49 LLS*, No. 26-CV-3000, 2026 WL 1735441, at *1 (S.D.N.Y. June 16, 2026) (quoting *Liteky v. United States*, 510 U.S. 540, 548 (1994)). The Second Circuit likewise applies an "objective" standard to the inquiry under 28 U.S.C. § 455(a), asking: "would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal." *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992); *see also Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 150 (2d Cir. 2014) (same).

The decision to recuse is "committed to the discretion of the judge who is being asked to recuse him[ or her]self" from the action. *Weston Cap. Advisors, Inc. v. PT Bank Mutiara Tbk.*, No. 13-CV-06945, 2019 WL 6002221, at *2 (S.D.N.Y. Sept. 20, 2019) (citing *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987)). "The Court has an affirmative duty not to disqualify itself unnecessarily." *Id.* at *3 (citing *Rosen v. Sugarman*, 357 F.2d 794, 797 (2d Cir. 1966)).

Plaintiff's pre-Motion letter does not describe *any* basis for recusal. (*See generally* Letter from Matthew J. Fecteau to Court (May 25, 2026).) Where a movant has failed to state specific facts indicating that the judge engaged in ex parte communications warranting recusal, or otherwise demonstrating an actual conflict or the appearance of impropriety, recusal is not appropriate. *See United States v. Conte*, 99 F.3d 60, 65 (2d Cir. 1996) (affirming decision denying recusal motion where "[t]here ha[d] been no showing whatever in the present case that there was any . . . favoritism or antagonism"); *Pasha v. N.Y.S. Dep't of Health*, No. 22-CV-03355, 2025 WL 831585, at *3 (S.D.N.Y. Feb. 27, 2025) ("[The plaintiff] fails to allege any

facts suggesting that the [c]ourt's impartiality might be reasonably questioned, and his accusations of bias are unsupported."); *Bromfield v. Bronx Lebanon Spec. Care Ctr., Inc.*, No. 16-CV-10047, 2021 WL 6055265, at *2 (S.D.N.Y. Nov. 30, 2021) (rejecting request to recuse where movant did not demonstrate that any rulings "rel[ied] upon an extrajudicial source, or that . . . [the judge] engaged in favoritism or antagonism at such a degree that would make fair judgment impossible," or "raise[] any facts that would lead an objective and disinterested observer to reasonably question [the judge's] impartiality in th[e] case" (citations omitted)); *United States v. Trudeau*, No. 10-CR-234, 2016 WL 591754, at *4 (D. Conn. Feb. 11, 2016) ("Because these allegations fail to raise a genuine question concerning the court's impartiality, they do not mandate recusal." (quotation marks and citation omitted, alterations adopted)).

Even if ex parte communications had occurred in this Action—which, to be clear, they have not—that in and of itself, while "improper and . . . discouraged"—would not suffice to mandate the Court's recusal. *Power Auth. of State of N.Y. v. FERC*, 743 F.2d 93, 110 (2d Cir. 1984). Instead, as the Second Circuit has explained:

> [T]he mere existence of such communications hardly requires a court or administrative body to disqualify itself. Recusal would be required only if the communications posed a serious likelihood of affecting the [decisionmaker's] ability to act fairly and impartially in the matter before it. In resolving that issue, one must look to the nature of the communications and particularly to whether they contain factual matter or other information outside of the record, which the parties did not have an opportunity to rebut.

*Id.* (citations omitted). *See also Busch v. City of New York*, No. 00-CV-5211, 2005 WL 2219309, at *9 (E.D.N.Y. Sept. 13, 2005) ("[T]here is a long-established tradition in this and other circuits of affording little or no weight to isolated ex parte communications, even in far more serious criminal and deportation contexts. [The movants] have made no showing of the [c]ourt's personal bias, prejudice, or knowledge in this matter as their assertions are based

entirely on the [c]ourt's unfavorable ruling and on sheer speculation about the impact . . . [of a party's] letter in that decision."); *Bilello v. Abbott Lab'ys*, 825 F. Supp. 475, 479 (E.D.N.Y. 1993) ("Although there is a duty to avoid ex parte communication, not every ex parte communication with the trial court requires recusal.").

For the same reason, a mere assertion of the possibility of personal interest or bias is not enough to justify recusal. *See United States v. Cain*, No. 05-CR-360, 2017 WL 1456980, at *5 (W.D.N.Y. Apr. 25, 2017). But to be crystal clear, although Plaintiff has not demonstrated that he is entitled to such disclosure, the Court is unaware of any personal interest in any party or matter involved in this Action that would justify recusal, and the Court harbors no personal bias toward any Party. *Cf. id.* (rejecting recusal motion, but nevertheless making similar point clear for the record). And, if Plaintiff would ask the Court to impute such bias from the substance of the Court's legal rulings or other case management decisions, these cannot form the basis for any motion to recuse. *United States v. Wedd*, 993 F.3d 104, 115 (2d Cir. 2021) ("Ordinarily, Section 455(a) will not require recusal based on a judge's comments during a proceeding that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases." (quotation marks and citation omitted)); *id.* at 117–18 ("[J]udicial rulings alone almost never constitute a valid basis for a partiality motion; flawed rulings are almost invariably proper grounds for appeal, not for recusal." (quotation marks omitted and alterations adopted).); *Watkins v. Smith*, 561 F. App'x 46, 47 (2d Cir. 2014) (summary order) ("[T]he fact that [the p]laintiff[] . . . w[as] unhappy with the district court's legal rulings and other case management decisions is not a basis for recusal . . . ."); *In re Int'l Bus. Machs. Corp.*, 618 F.2d 923, 927 (2d Cir. 1980) ("'The alleged bias and prejudice to be disqualifying [pursuant to Section 455] must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge has learned from

his [or her] participation in the case.'") (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)); *Marshall v. City of Meriden*, No. 11-CV-577, 2017 WL 5513201, at *4 (D. Conn. Mar. 9, 2017) (explaining the court's prior determinations were not appropriate as the basis for a recusal motion).

In light of Plaintiff's failure to identify any basis to believe that recusal would be appropriate, and even taking as a given the dubious assumption (implicit in Plaintiff's premotion letter) that a party can leverage a recusal Motion to scry into a judge's in-chambers communications and decision-making process, Plaintiff has not shown that there is any basis to entertain the Motion he has requested leave to file, and has indeed conceded that he has no basis for believing that recusal would be warranted.[5]  Accordingly, Plaintiff's request is denied.  *See IBM Corp. v. Micro Focus (US), Inc.*, No. 22-CV-9910, 2024 WL 1242534, at *1 (S.D.N.Y. Mar. 22, 2024) (explaining the Second Circuit's approval of construing pre-motion letters as motions themselves where those letters were "sufficiently lengthy to address all relevant arguments and where there was a clear lack of merit to the arguments supporting the motion" (wholly quoting *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 54 (2d Cir. 2022)); *NMD Interactive, Inc. v. Chertok*, No. 11-CV-6011, 2017 WL 993069, at *3 (S.D.N.Y. Mar. 13, 2017)

---

[5] Although privacy and transparency are admirable goals that each branch of our tripartite system of government must strive to advance, these goals are not without their limits.  To the extent that Plaintiff's request for "non-record communications concerning Plaintiff" and his suits is meant to seek the Court's internal communications, his request is squarely foreclosed by these limits.  The internal deliberations of a court are not subject to a public right of access or disclosure requirements.  *See, e.g.*, *In re Bank*, 850 F. App'x 115, 120 (2d Cir. 2021) (summary order) ("[L]itigants and the public generally have no right of access to internal court communications."); *United States v. Casas*, 376 F.3d 20, 21–23 (1st Cir. 2004) (holding that a district judge's internal court memoranda were confidential, not subject to disclosure pursuant to the Freedom of Information Act, and not part of the record in the case); *Nixon v. Sirica*, 487 F.2d 700, 717 (D.C. Cir. 1973) (noting confidentiality traditionally afforded to communications "among judges, and between judges and their law clerks").

(explaining propriety of the same practice where it was clear from letters that the moving party had the chance to make any relevant arguments and nonmoving party had an adequate opportunity to respond), *aff'd sub nom. StreetEasy, Inc. v. Chertok*, 730 F. App'x 4 (2d Cir. 2018) (summary order).[6]

Accordingly and for the reasons described above, the Clerk of Court is respectfully directed to unseal the March 25, 2026 Opinion in this Action in its entirety. The Court further denies Plaintiff's request to file a motion seeking this Court's recusal and related disclosures as

---

[6] In an additional letter Motion, Plaintiff purports to "seek clarification and disclosure" as to "whether there have been any communications, relationships, or circumstances involving Magistrate Judge McCarthy and Mr. Andrew Quinn of The Quinn Law Firm that may bear on the appearance of impartiality in these proceedings." (Letter from Matthew J. Fecteau to Court (June 11, 2026) 1 (Dkt. No. 378).) He requests specifically disclosure of "any communications outside [his] presence" between Judge McCarthy's chambers and certain entities and individuals involved in the Related Action. (*Id.*) He also requests disclosure of "any relationship" between Judge McCarthy and Andrew Quinn or the Quinn Law Firm "that is not apparent from the docket and that could reasonably" create the appearance of impartiality. (*Id.* at 2.) The Quinn Law Firm responds that "no such communications have occurred, nor does QLF or any member of this Firm have any relationship of any kind with Magistrate Judge McCarthy," and further, "[n]o member of the Quinn Law Firm has ever had any ex parte communication with the Court." (Letter from Andrew C. Quinn, Esq. to Court (June 16, 2026) 2 (Dkt. No. 379) (emphasis omitted).)

As described, Plaintiff has not demonstrated that there exists *any* legal basis for the type of disclosure he seeks. And, as already explained, the proper mechanism for recusal is to identify *some* facts or reason to believe that there exists an appearance of impartiality, an assertion that would then be evaluated under the appropriate standards—not to embark upon a fishing expedition that establishes *post hoc* some tenuous rationale for recusal. As Plaintiff has failed to make either showing, the Court rejects Plaintiff's request for "clarification" and "disclosure" of the requested information as to Judge McCarthy.

To the extent that Plaintiff is seeking reconsideration of the Court's earlier determination in the now-unsealed Opinion Plaintiff had not supported his allegation that "Judge McCarthy violated the Code of Conduct for United States Judges," (Op. at 29), he has identified no new support for his argument and, therefore, there is no basis to reconsider the conclusion. *See Mohamed v. New York Univ.*, No. 14-CV-8373, 2015 WL 7076124, at *1 (S.D.N.Y. Nov. 12, 2015) ("Because [the p]laintiff has not presented new facts or authority that would alter the [c]ourt's prior conclusion and advances no new argument, reconsideration is inappropriate here."). In other words, it remains true that "[Plaintiff's] assertions that any ex parte communications occurred are conclusory and lack support." (Op. at 31 (emphasis omitted).)

well as Plaintiffs request seeking disclosures as to Judge McCarthy described in footnote 6,

*supra*.  Plaintiff has not identified any basis for the disclosure-related relief he requests.

SO ORDERED.

DATED:      June 29, 2026
              White Plains, New York

                           KENNETH M. KARAS
                           UNITED STATES DISTRICT JUDGE